IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 25-cr-00106-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

ABRAHAM GONZALEZ-ROMERO,

Defendant.

---

**OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (PSR)**

---

Defendant Abraham Gonzalez-Romero, through undersigned counsel, files the following objections to the presentence investigation report, Doc. 57.

I. OBJECTIONS TO "ADDITIONAL INFORMATION" ¶ 12 TO 23

<u>Paragraph 12</u>

Mr. Gonzalez-Romero is not affiliated with Tren de Aragua. As probation states, there is no evidence to support this.

<u>Paragraphs 13</u>

The facts in this section are untrue. Mr. Gonzalez-Romero denies involvement in the incident on January 23, 2024. Mr. Gonzalez-Romero did not shoot at either of these individuals. Mr. Gonzalez-Romero did not bring firearms into the home of MITV and ERAR. MITV and ERAR had their own firearms in their home.

<u>Paragraph 14</u>

All the information in this section is untrue, as it relates to Mr. Gonzalez-Romero being the perpetrator of the crime and accessing firearms. Mr. Gonzalez-Romero reports that the

photograph that depicts him handling a Glock was, in fact, ERAR's Glock. Mr. Gonzalez-Romero just posed for a photograph with it. Mr. Gonzalez-Romero did live with MITV and ERAR, but he moved out (not kicked out) because Mr. Gonzalez-Romero was frustrated that he was paying MITV and ERAR rent but they were still going to be evicted because MITV and ERAR were not paying the landlord. MITV posted a $100 bond for Mr. Gonzalez-Romero, on February 29, 2024, undermining any allegation that MITV feared Mr. Gonzalez-Romero. Restricted Ex. A.

Notably, the drafter of the PSR left out a very important detail of the investigation of this case – that in March 2024 a Denver Police Detective showed MITV and ERAR photos of Mr. Gonzalez-Romero and Mr. Anaya-Gonzalez, the two individuals they accused of shooting at them; MITV and ERAR failed to make an identification of Mr. Gonzalez-Romero, despite being familiar with him. In fact, MITV and ERAR explicitly said when shown a photo of Mr. Gonzalez-Romero, that he was not the person who shot at them. The detective asked them, again, to make a photo identification of Mr. Gonzalez-Romero. MITV and ERAR, again, did not identify Mr. Gonzalez-Romero. The detective asked MITV and ERAR if they were afraid to make an identification, to which they replied, "no." The detective then said that he was not understanding why they were not making an identification and showed them photos for a third time. This time, MITV and ERAR made an identification. ERAR once told Mr. Gonzalez-Romero that if you are the victim of a crime in the United States you can get legal status.

ERAR and MITV are not reliable. Both have been in ICE custody and possibly deported based on criminal activity. ERAR and MITV stole approximately $20,000 worth of merchandise from Walmart over a period of months in 2024. Restricted Ex. B. ERAR had a pending prostitution case on January 23, 2024, and a warrant had been issued for his arrest. Restricted Ex.

C. MITV had familiarity with firearms and posted a TikTok video of her with firearms and a large amount of ammunition. Restricted Ex. D. *See, also* Ex. B, p. 14 (photo of MITV).

<u>Paragraph 15</u>

The sole witness who allegedly observed the events was, at minimum, an acquaintance of MITV and ERAR.

<u>Paragraph 16</u>

The information in this paragraph regarding Mr. Gonzalez-Romero driving recklessly, running several stop signs and traveling on the other side of the road is exaggerated. A video was produced in discovery. Restricted Ex. E. [INV_2099]. It shows Mr. Gonzalez pulling out of the gas station at 15:53:20. Police activate their lights, and Mr. Gonzalez pulls back into the gas station at 15:53:36, in what appears to be an effort to comply with the police effectuating a stop of his vehicle.

<u>Paragraph 17</u>

The probation officer reports that the charges were dismissed because MITV and ERAR refused to cooperate. This information is contained in a police report drafted by a federal agent, but there is no specific information about their refusal to cooperate. If MITV and ERAR recanted or explicitly said that Mr. Gonzalez-Romero was not involved in the shooting on January 23, 2024, this is *Brady* information that the government must turn over if it is in the possession of the prosecution team, which would include the Denver Police Department. The Denver Police Department drafted and presented the search warrant of the telephone where the images of Mr. Gonzalez-Romero possessing the Glock came from. ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or *punishment*." *Brady v. United States*, 373 U.S. 83, 87 (1963) (emphasis

added). Counsel has requested this information, and the government has written back stating, "You have everything I have." *Brady* extends beyond information that is within the prosecutor's personal knowledge. Instead, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).

The government asserts the case was dismissed after MITV was arrested by immigration officials. This is not contained in any reports and it is unclear where the government learned this information. The Denver District Attorney would have had a difficult time proving the allegations with the identification procedure that clearly violated Mr. Gonzalez-Romero's due process rights and the credibility problems with MITV and ERAR based on their criminal conduct. Additionally, the PSR indicates that they began giving inconsistent information about the shooting. Giving inconsistent information and refusing to cooperate is consistent with MITV and ERAR making false allegations against Mr. Gonzalez-Romero. This information is also discoverable for sentencing under *Brady*. Unless the government can assure that it has done its *Brady* due diligence with regard to MITV and ERAR's lack of cooperation and inconsistent stories, this Court should not even begin to consider this enhancement.

<u>Paragraph 18</u>

The information contained in this paragraph is false. The badges and placards indicating the agents were law enforcement officers were not visible to Mr. Gonzalez-Romero, and he did not know they were ICE agents when they approached him. Some of the agents were in plain clothes. Mr. Gonzalez-Romero did not hear agents yell, "Police. Stop." The other ICE agents chased Mr. Gonzalez-Romero into the ICE agent, K.C. Mr. Gonzalez-Romero was not

combative after his arrest. He did not kick the inside of the caged vehicle. He did not attempt to escape. He did not attempt to bite an officer. He did not tell officers that he wanted to fight them. He was yelling at the officers in Spanish that they do not care about anybody and they do not care about anyone's rights. The government is dismissing this charge at sentencing.

Paragraph 19

There was a video produced in discovery that depicts two unknown individuals in a car. The individual handling the phone appears to prop up the phone while he videos himself shooting the Glock three times out of the sunroof. There is one other individual in the car. Neither person in the car is Mr. Gonzalez-Romero. Perhaps the video was taken with Mr. Gonzalez-Romero's telephone, but Mr. Gonzalez-Romero is not present in the video. He is not filming the video. Restricted Ex. F. INV_285. This paragraph further underscores Mr. Gonzalez-Romero's assertion that the Glock firearm did not belong to him. He just posed with it for a photograph on December 4, 2023, and that is the factual basis this Court should consider at sentencing.

Paragraph 21

The NIBIN report indicates this firearm was associated with firearm discharges on January 2, 2024, March 31, 2024, and December 23, 2024. The NIBIN match was from January 2, 2025, not 2024. Restricted Ex. G. Mr. Gonzalez-Romero was in custody on January 2, 2025.

Paragraph 22

Mr. Gonzalez-Romero denies the allegations in this paragraph with respect to the motor vehicle theft. Because there are pending criminal charges, Mr. Gonzalez-Romero is invoking his Fifth Amendment rights to comment further on the allegation. The probation officer left out some important details about the February 2, 2024 incident. The alleged "victim" was filming

two men and the vehicles in the parking garage for a YouTube channel. The two men approach him and start speaking in Spanish, saying “amigo”. The alleged “victim” then pulls out pepper spray on the two men. One of the two men then took out a telephone to start filming the alleged “victim”. The alleged “victim” then starts running away from them and a Hispanic male who is 5’8” (Mr. Gonzalez-Romero is 6’0’) reportedly ran toward him with a metal object over his head. The alleged “victim” identified Mr. Gonzalez-Romero in a show-up. Mr. Gonzalez-Romero was unarmed when arrested by police. As the probation officer correctly notes, the prosecutor declined to file charges because of “no likelihood of conviction”.

Paragraph 23

Mr. Gonzalez-Romero requested a disclosure from the probation department so that he could better respond to the allegations made in this paragraph. The probation department refused to disclose this information. There is nothing in any report that indicates MITV and ERAR stated they were afraid to cooperate in the prosecution of Mr. Gonzalez-Romero. This is also inconsistent with another assertion in the PSR that MITV and ERAR began giving inconsistent information about the shooting and refused to cooperate. ERAR was in ICE custody and appeared in Federal District Court for a material witness warrant and the government did not produce any new interviews with him about the shooting to determine if he was still accusing Mr. Gonzalez-Romero of shooting at him on January 23, 2024. The government’s speculation that ERAR might be released and not found before he would have to testify is speculative. The government made the plea offer to Mr. Gonzalez-Romero before ERAR’s detention hearing. If the government were concerned about flight, it could have asked for location monitoring for ERAR. ERAR was detained in ICE custody so it is unlikely he would have been released.

The government’s statement that this offer was made “due to available resources” is

without merit. The United States Attorney's Office in Colorado continues to charge hundreds of individuals a year with crimes. The Justice Department Manual requires the government to go forward on "the most serious readily provable offense". Justice Manual 9-27.430. Furthermore, Attorney General Pam Bondi's enforcement memorandum on February 5, 2025, specifically prioritizes prosecuting undocumented immigrants and obstruction of law enforcement.[1] Certainly, if the government believed it could move forward on more serious offenses against Mr. Gonzalez-Romero, it would have, because he would otherwise fit the Attorney General's enforcement priorities.

## II. OBJECTION TO THE GUIDELINE RANGE

Mr. Gonzalez-Romero objects to the four-level enhancement under USSG § 2K2.1(a)(6)(B). Mr. Gonzalez-Romero did not shoot at MITV and ERAR. While it appears there is a presumptive ballistic match between the Glock in the photo that Mr. Gonzalez-Romero posed with on December 4, 2023 and the shooting on January 23, 2024, it is clear from the discovery and the PSR that many people handled this firearm. There were ballistic matches in three other shootings. Doc. 57, ¶ 21. Mr. Gonzalez-Romero was in custody during all of those incidents, except January 23, 2024. Exhibit F depicts two other individuals in possession of that firearm on November 29, 2023. An individual was arrested with that firearm on January 2, 2025.

"If a defendant properly objects to facts in a PSR, the government must prove that fact at a sentencing hearing by a preponderance of the evidence." *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022). The government has not proven, nor can it prove, that Mr. Gonzalez-Romero shot MITV and ERAR so the Court should not apply an enhancement under USSG § 2K2.1(a)(6)(B). Without this enhancement, the proper total offense level is 12. The

[1] https://www.justice.gov/ag/media/1388541/dl

advisory guidelines range for criminal history category I is 10 to 16 months.

VIRGINIA L. GRADY
Federal Public Defender

s/ Kelly Christl
KELLY CHRISTL
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Kelly_Christl@fd.org
Attorney for Defendant

*I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.*

*/s/ Kelly Christl*
KELLY CHRISTL
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I certify that on August 19, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

Garreth Winstead, Assistant U.S. Attorney
Email: garreth.winstead@usdoj.gov

and I will serve the document or paper to the following non-CM/ECF participant in the manner indicated:

Abraham Gonzalez-Romero (via mail)

s/*Kelly Christl*
KELLY CHRISTL
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Kelly_Christl@fd.org
Attorney for Defendant